Good morning. May it please the court. My name is Yotam Barkay. I represent Plaintiff Appellant Roberto Garcia. I've reserved five minutes of my time. The issue in this case is whether the District Court erred in dismissing Mr. Garcia's 1983 claim for violation of the Fourth Amendment as time barred. Mr. Garcia's claim was timely. The District Court should be reversed. The accrual date of a Section 1983 claim is determined by reference to common law torts. Here, the closest common law tort analog to Mr. Garcia's claim for accrual purposes is malicious prosecution. Mr. Garcia alleges that the arresting officer made false statements to the magistrate, that the prosecution suppressed exculpatory evidence, and that the prosecution pressed charges for 16 months before finally dropping them and releasing him. Mr. Garcia further alleges that he was prosecuted because the arresting officer received financial incentives to make alcohol-related arrests. Before you get too far afield, you talk about arrests. To me, that's the pre-process claim. I didn't see anything in there as the City of San Antonio that would qualify as a post-process claim, malicious prosecution. Judge Owen, the financial incentives are alleged in the complaint. Are alleged for arrests. It does not say prosecutions. It says arrests. I see, Judge Owen. But the financial incentives are nonetheless the same incentives that underlie the entirety of the prosecution. So they're the reason why... That's not alleged. The allegation is they get federal money if they have a certain number of DWI arrests per month, which says nothing about actually prosecuting them. So I didn't see anything in there in the complaint that got to the City of San Antonio's post-process claim. Well, Your Honor, so even if there weren't anything to that effect in the complaint, there are still allegations in the complaint underlying the analogy to malicious prosecution insofar as Officer Orta is concerned. That may be the case. I'm just trying to be... But this wasn't a 12b-6, though, was it? Your Honor, it was a Rule 12c, so the standard would be the same as for 12b-6. Well, I understand the standard, but what I'm saying is that the sufficiency of the allegations beyond limitations is not before us. That's correct, Your Honor. So the sufficiency of the allegations is — was not briefed before the district court, and it was not decided before the district court. And the only question before the Court of Appeals currently is the statute of limitations. But if there's no post-process claim against the City, then the limitations was correct. In other words, if there's only an arrest claim against the City that's properly barred by limitations, we'll sort it out. I'm just making the point that we've got two different entities here and limitations depends, to me, on the claims made against each. Your Honor, I understand the Court's concern, and I think that part of the complication is that on a pro se complaint where the allegations need to be liberally construed but are a little bit hard to parse, frankly, given the handwritten nature of the complaint, as well as that this is clearly the plaintiff appellant's second language, it's a little bit difficult to distinguish. But what is clear is that throughout the complaint there are these allegations of improper motives and as well as misconduct during the course of the prosecution. And that misconduct clearly is alleged to extend past the arrest itself. So suppression of evidence as well as false statements to the magistrate, those allegations make this claim analogous for accrual purposes to malicious prosecution. And that's because the main elements of malicious prosecution are similarly that criminal proceedings were instigated with an improper purpose and without probable cause. And as the Court knows, a 1983 claim analogous to malicious prosecution accrues when the criminal proceedings terminate in the plaintiff's favor. Here that occurred less than two years prior to filing of the complaint. The District Court appears to have viewed the claim, although without explicit analysis, as analogous to false arrest. And that was incorrect. The Supreme Court recently reiterated in McDonough v. Smith and has said before that a false arrest claim attacks the arrest only and attacks the arrest to the extent that it was without legal process. And so a claim that directly challenges the prosecution, including alleging falsified evidence and affidavits, is what we have here. And that is instead analogous to malicious prosecution. And, Judge Owen, I would return to your question from earlier regarding the City of San Antonio's involvement in the arrest. So to the extent that the City of San Antonio's financial incentives that are alleged in the complaint would make the arrest an arrest for improper purpose, that still is closer to malicious prosecution than a typical false arrest claim, which is simply arguing that the arrest was without legal process. So those incentives nonetheless would bring the City of San Antonio within the ambit of a 1983 claim analogous to malicious prosecution. I also want to note that Appellees have proposed a different rule, but the rule that Appellees have proposed, which they claim is more attuned to the nature and purposes of the Fourth Amendment, would be a claim under which Mr. Garcia's 1983 claim would still be timely. And that is to say that Appellees have suggested that the claim for a violation of the Fourth Amendment regarding pretrial detention here would accrue once that detention ends. And Mr. Garcia has alleged in his complaint that he was released from detention at the same time that he — that the charges were dropped, which occurred in December 2015. That was less than two years prior to filing the complaint. So under the way that the Supreme Court and the Fifth Circuit have addressed the accrual of 1983 claims, which is through analogy to common-law tort, as well as under the Appellee's rule, either way Mr. Garcia's claim is timely. I want to touch briefly on McDonough v. Smith because the Appellees have said in their response, Rule 28J letter, that that claim is distinguishable for being not a Fourth Amendment claim. And that's — that's incorrect. So the — what the Supreme Court says in McDonough v. Smith and what — what it essentially reiterates — I'm sorry. So what — what the Supreme Court essentially reiterates in McDonough v. Smith is that the — although the Court must, of course, consider what the constitutional violation at stake is, whether Fourth Amendment or anything else, the — the accrual rule is determined by analogizing the facts of the case to a common law. I was going to say, they — they pointedly did not say whether the claim sounded in the Fourth or the Fourteenth, right? Well, the — the Supreme Court — the dissent criticized the majority for not spending enough attention on that issue, as — as Your Honor indicates. But the — that appears to be because the — the sides were not really disputing that issue, and so it just — it wasn't crucial to the — Yeah, but it's — well, right. Well, you can say that, but it's certainly a preliminary issue. But anyway. So it — it may be, Judge Jones, that the preliminary issue, of course, is to consider what constitutional violation is at stake. But the — the second step in the analysis is, according to the Supreme Court and to this Court, to analogize the facts to a common law tort for purposes of determining the accrual. And so the facts of McDonough and the facts of Mr. Garcia's case are rather similar. Both cases involved fabricated evidence. Falsified affidavits are alleged in both cases. In both cases, there are allegations of improper purposes. So in McDonough, there was apparently a political grudge alleged there, whereas here, Mr. Garcia has alleged financial incentives and retaliatory motives. So in — in that respect, the facts of both McDonough and Mr. Garcia's case are similar, and the case is not meaningfully distinguishable. Does the Supreme Court's decision in that case — maybe this is getting to the 12b6 part of it, but that case recently that said that you don't have a First Amendment defense, if a — if the officer had probable cause to arrest, you cannot assert a First Amendment retaliation claim, right? They — they ruled on that this year recently also, and I was just wondering if that has an overlay here. Your Honor, it may be that that case might matter to the analysis somewhere down the road. But as Your Honor indicated at the outset of your question, the district court decided this case based on just the statute of limitations. And so on appeal, the question is really whether the district court was in error in dismissing the claim as time-barred. And we certainly appreciate your being pro bono here. I'm just wondering, did you — have you spoken to your client? I have, Your Honor. I've spoken to my client. The — the — the — obviously, the court is confined to the four corners of the complaint and to matters of which the court can take judicial notice. So, you know, it — it may be that — that further down the road, that — that case would have an impact on the analysis. But at this stage, it — it does not for purposes of the statute of limitations. In addition, the — the core claim that — that my client alleged in his pro se complaint was a Fourth Amendment claim involving his pretrial detention that lasted for 16 months without probable cause. And so the — the First Amendment case may — may or may not matter down — down the road, but certainly not at this stage when the question is simply whether the claim was time-barred. I would — unless there are further questions, I would — What's the ultimate leap you want from us to send it back down for the district court to consider in light of all that has come to pass since, both in terms of Manuel, et cetera, or, as you say, only the statute of limitations is before us? What's — what's the relief you look for narrowly from this panel? Judge Stewart, the relief that we're asking for is reversing the district court's decision, dismissing the complaint as time-barred, and remanding for further proceedings, including proceeding to discovery. The — although there have obviously been intervening proceedings, including just a couple of months ago, the Supreme Court's decision in McDonough, the — this Court certainly can, on the face of the complaint and within the four corners of the complaint, determine that that claim is timely, and — and we have submitted that it should determine that that claim is timely, and that does not require a remand to the district court to reconsider. This Court can and should make that determination. If there are no — if there are no further questions, I'll reserve the remainder of my time. Thank you. Thank you. All right. Mr. Fitzpatrick. Hello. May it please the Court? My name is Sean Fitzpatrick. I am arguing here on behalf of Chief McManus and — and Julio Orta, the officer involved who made the arrest. I think that what I want to do is present a couple of brief points to the Court, make two arguments, first being that Mr. Garcia did not plead that his post — post-arraignment detention violated the Fourth Amendment because the legal process lacked probable cause. Instead, what he pled was a claim for false arrest. That's how it was treated by us. That's how it was treated by the Court as well. And so it was properly dismissed on — on limitations grounds for reasons that I'll address. Secondly, I would like to make an argument that even if he — he had made that pleading, the facts that he pleaded negate his cause of action by establishing probable cause, especially with respect to the — to the subsequent process that was issued. But before I do that, I want to just touch on a couple of points that opposing counsel made. First of all, with respect to the allegation that Mr. Garcia was confined for 16 months, that's not clearly pleaded in his — in his petition. And therefore, the argument that we put forth in our — in our brief concerning the alternate accrual rule that we were proposing makes more sense in that respect. I — I agree that — that Mr. Garcia first pleaded that he had been in confinement the entire time, even after he was bonded by the magistrate, for the first time here on appeal. If — if that's so, if he had pleaded that, then — then perhaps our argument would have been a little bit different. The second point I'd like to make goes to Judge Owen's point concerning the City of San Antonio. There were no post-arrest claims made against Chief McManus either. Those — those concerns would go to the chief as well. And with respect to McDonough, the — in my brief letter brief, I — I distinguished that the — the case went to trial, and therefore, there was actually a prosecution, and perhaps then the — the malicious prosecution analogy made by the court under the 14th Amendment, or at least assuming — an assumed 14th Amendment claim, makes a little bit more sense in that context than this one, where you — everything that happened in this case was only Fourth Amendment. And in fact, in the Seventh Circuit, at least at the district court level, because that case is very new and there are few decisions or orders talking about it, a case called Mayo v. LaSalle County, Indiana. It's a 2019 Westlaw 320-2809. The district court explains that it is not going to change existing circuit precedent in the Seventh Circuit, or needs to follow existing Seventh Circuit precedent, because there's no grounds to — to change it based on a presumed cause of action that was basically an entirely hypothetical opinion. Did you — did you look at a case out of the Seventh Circuit called Manuel v. City of Joliet? Yes, Your Honor. I — I call that Manual 2. Right. And it — it, for different reasons, proposes the same accrual principle that — that when the — their reason was, look, if you're pretrial, then all you have to attack the — your confinement is a — is a habeas corpus claim. And at the point where you no longer have a habeas corpus claim, that is when you're no longer confined, then your cause has accrued. My argument is similar, but my argument goes more towards the purposes and values of the amendment, which — which Castellano told us that we have to look at. Castellano — Castellano has told us that this is — there is no constitutional malicious prosecution tort. The tort is the Constitution. And the only thing that the Fourth Amendment protects, the only thing that the Fourth Amendment guarantees, is that you will not be detained or arrested without probable cause. And so the detention is key.  Well, if — if we take the allegation, which I thought was in his complaint, but maybe I was wrong, that he was detained for 16 months, then the detention ended within the period of limitations. That is correct, Your Honor. Under your — under your theory. And that's why I said earlier on that the argument made more sense, the way that the Court and — and the defendants interpreted the — Okay. I thought he did allege that he was retained for — Well, it's interesting. What he alleged, Your Honor, was that he was taken before the magistrate. He was bonded $75,000 — arraigned on $75,000 bond. Okay. And then he says that he — he wasted years and months of — of his life. But when you look at his damage complaint, if you — if you scrutinize the types of anguish that he's claiming that he endured because of this, it's not real clear that he wasted years and months of his life in — in confinement. I'll be — It's a pro se — I thought he — It's a pro se complaint. I mean — He was arrested and sent to a detention center without probable cause, and charged with a DWI, when there was no evidence suggesting that he was guilty of any crime. I thought he — I mean, taken together, that sounds to me like he was detained — he's alleging he was wrongfully detained after he was arraigned. Okay. Well, if the complaint must be construed, as the chief judge indicates, in favor of — of the pro se litigant, then — then perhaps that's — that's not a point that we need to pursue here. All right. So he did plead facts, and regardless of whether he's pro se or not pro se, he's still charged with pleading facts, and he's charged with pleading them plausibly. And I think we might be mistaken for not reading that as a plausible allegation of continued confinement. But with respect to other facts that he's pled, I think that the — well, the analysis is a little bit more clear. First of all, Mr. Garcia appears to only have pleaded a federal claim, at least under Section 1983. Let me just ask you this. We're here — I mean, the judge didn't rule on the sufficiency of the complaint to state a claim. Right. And as I read both of your appley briefs, a lot of what you were doing was quarreling with his — the sufficiency of his allegations to state a claim. So since all we're here on is statute of limitations, if we vacate and remand, you're still entitled to make those arguments on remand. That's true. Okay. With that in mind, unless the court has additional matters that they wish to inquire about, I would cede my time back to the court. All right. You represent Captain Orta, right? Yes, Louis Orta. Yeah. Okay. Got it. Thank you, sir. Thank you. All right. Mr. Bennett, on behalf of the city. FIT Polices Court? Yes, sir. My name is Brad Bennett. I represent the city of San Antonio in this case. And I would like to start by saying that the city's defenses are similar to those that Mr. Fitzpatrick just argued, and we believe that we are entitled to all of those defenses involving the properly-plugged facts that we believe leave out an essential element of his claim. However, further, and similar to what Judge Owen was previously arguing, the city is entitled to, even if the claim against Officer Orta is to survive, the claim against the city should be dismissed. And there's several reasons there. And I'd also like to hit on something the opposing counsel said on McDonough. But according to the plaintiff's own pleadings, under his pro se pleadings, and I believe that this is a point that he makes, and that's that the city is not a party to the malicious prosecution. He says that this is against Officer Orta in his individual capacity. I believe that's a very intentional statement on his part, because he knows that this claim about malicious prosecution would not survive the city. What the analysis that needs to be brought then is under Monell. And even though he does, the plaintiff hits on the first part of Monell, which is putting forth this policy where there's a financial incentive to officers to make arrests. And what this case would have to be, there's a financial incentive for officers to make arrests without probable cause. Otherwise, there should be no violation here. And that the city receives federal money for said arrests without probable cause from the federal government. And I believe that fails under Monell because under Monell, the policy practice in this case would have to be a moving force behind the allegations. So it has to be the city's policy that encourages officers to make arrests without probable cause. And then this gets to what Judge Owen was saying, that this involves the arrest itself is what the city's policy would be doing, not the later on any type of misrepresentations. And I believe that the misrepresentations in this case are key. The fraud misrepresentations, first off, in all of the case law, all of the cases that support the statute of limitations, as opposed to counsel's arguing, involve fraud misrepresentation. And I believe that without facts alleging what the misrepresentation was, this case cannot stand because that would be an essential element. And that's what, therefore it's misrepresentations entirely involve the arrest. Now, as for McDonough, which I also believe does not go towards the city's liability in this way. Justice Sotomayor is very clear on what the reasons behind this opinion are. 2158 discusses the parallel civil and criminal litigation. It's a great concern to her. I believe it says it runs counter to the core principle of federalism, commodity, consistency, and judicial economy. There's a lot of reasons why you shouldn't have these parallel tracks. However, that is a parallel track against the officer and the plaintiff. When it's a parallel track, a suit against the city about a policy that is depriving people of constitutional rights, I believe the justice demands that this is brought as soon as possible, that this cannot languish while someone two, three, five, 10 years past the statute of limitations. This needs to be brought up. And this is actually discussed. Is that contrary to Heck versus Humphrey? Well, in Heck versus Humphrey, that was a conviction based on fraud. You said your claim doesn't accrue until you've been exonerated of whatever charges were brought, right? Yes, ma'am. As far as the public policy behind the Heck versus Humphrey, I believe Wallace v. Cato would be a better case because it actually discusses the need for this to be brought up as soon as possible when it involves the state municipalities. And it says that the state municipalities have a strong interest in timely notice of alleged misconduct by their agencies. It cites 11 different states that submitted briefs to this point. And if a city has a policy that is leading to constitutional violations, that policy needs to be changed. We're not arguing otherwise. But what we're saying is that while McDonough was brought up because in order to ensure the rights of these individuals during their criminal trial, it's also important when you're dealing with the city's policy that it is addressed as soon as possible. Therefore, the justice is not served by allowing this to stretch on. That doesn't make sense, I don't think, with due respect, because if the defendant is guilty, the city is not going to be liable. So what? So the policy is not going to be enforced, changed by a court. Well, and I believe that. I'm not sure I follow your argument. Well, yes, ma'am. And so I guess in the argument that I'm making would not have to do with a conviction that would be based on fraud in the same way that the hack was decided. All right. Mr. Bennett, you have red lights. Oh, thank you, sir. All right, thank you. All right, we'll back to you, Mr. Barton. Thank you. I'd like to start with the allegations in the complaint regarding Mr. Garcia's detention. So the allegations in pages of the record to which I would refer the court are page 12 of the record, paragraph 11, where Mr. Garcia alleges, quote, plaintiff lost years and months illegally detained against his will. Following that, page 13 of the record, paragraph 12, after approximately 17 months, the prosecutor dismissed the alcohol-related charge on December 4, 2015, read in context, liberally constrained the allegations, that presents the detention for 16 months. Furthermore, in Mr. Garcia's initial brief before this Court, before I was appointed as his counsel, page 9 of his initial brief, he states, quote, Roberto was detained for 17 months, rounding up, in Bexar County Detention Center. That's at page 9 of his brief. So those are the allegations to which we refer the court regarding the length of the detention. Second, with regard to the city of San Antonio, following up on Judge Owen's question from earlier, as well as some of the comments made by Appley's here, first, McDonough says that a false arrest claim, or really a 1983 claim analogous to false arrest, is a claim that targets just the arrest and just the arrest for being without legal process. So an incentive or a policy put in place by the city that creates an incentive for arrest for improper purposes would also sound in an analogy to malicious prosecution. There may be, in addition to that, factual issues and legal theories as to supervisory liability for the city, supervisory liability on the part of Chief McManus, and those are issues that have not been decided by the district court, and those are issues that may... end up with liability for the city of San Antonio. Those weren't pled. I'm sorry? There was no pleading of failure to supervise. Um, Your Honor, there are allegations of supervisory issues. So, for example, page 13 of the record, paragraph 14, states that managers and supervisors know that its officers are making unwarranted arrests, but they turn a blind eye because this misconduct allows the San Antonio Police Department to receive more federal money. That's at page 13 of the record, paragraph 14 of the complaint. In that same paragraph further down the page, Mr. Garcia alleged that the San Antonio Police Department is well aware of the culture and practices described herein, but that it has failed to correct these abuses and has failed to conduct proper training. So there are, Your Honor, there are allegations. Arrests, not prosecutions. Your Honor, so this returns us to the question that you asked earlier. So the incentive is to make the arrest, but that incentive makes the arrest one for improper purpose, which is still a malicious prosecution type 1983 claim, not a false arrest claim, which is a claim where there's no legal process. Touching on some of the McDonough issues that were raised primarily by Mr. Fitzpatrick, so the Mayo case stating that existing precedent still controls, we don't dispute that McDonough was primarily reiterating the principles that already applied and that already made Mr. Garcia's claim timely in this case. As Judge Jones asked about Heck v. Humphrey as one of the clear precedents on point here, the theories, both the policy reasons and the theories underlying Heck v. Humphrey and McDonough v. Smith compel the same outcome for Mr. Garcia regardless of whether a conviction occurred, regardless of whether a trial occurred. The point is that Mr. Garcia's claim is a claim about the nature of the prosecution. It's a claim about the nature of the police misconduct, the suppression of evidence that lasted for 16 months, and a claim like that threatens, in Justice Scalia's words from Wallace v. Cato, it threatens to impugn the ongoing prosecution. So contrary to Mr. Bennett's argument, under Supreme Court precedents cannot be brought while the prosecution is ongoing. Um... So, uh, unless there are further questions, we, um, request that the Court of Appeals vacate and remand this case to the district court for further proceedings. All right. Thank you. All right, thank you. I appreciate your signing up for the pro bono work in the case, uh, staying tethered to it, I take it, or whatever the hall is. You're welcome. It's our pleasure. Thank you. Uh, Mr. Bennett, Mr. Fitzpatrick, thank you both for your briefing and argument in this case. Uh, the case will be submitted. That concludes all the cases that are on the docket for today. Uh, with that, the panel will stand in recess until 9 a.m. tomorrow. Thank you.